Case number 243530, Steve Snyder et al. v. Village of Luckey OH Argument not to exceed 15 minutes per side Mr. Murray, you may proceed for the appellants Good morning your honors, may it please the court, my name is Zachary Murray As I said, my name is Zachary Murray and I represent the Snyder family and Beth Rose Real Estate and Auction, the appellants in this matter. We request three minutes for rebuttal. We are here today to seek the reversal of the Northern District of Ohio's February 12, 2024 judgment, dismissing plaintiff's complaint on the basis of a 12b6. We're also seeking the reversal of the court's erroneous June 7, 2024 judgment, denying our motion to alter or amend its prior erroneous entry. This is a interesting case, your honor. My clients, owners of property, worked for years to develop the property with the intention of selling it for residential or commercial development. They did years of work and as they were marketing and getting ready to auction the property, the village decided that they would freeze my client's ability to exercise their fundamental property rights, interfere with the auction sale to prevent the fair market value from being ascertained in order to initiate condemnation proceedings at some later date. Now that later date was determined to be after we filed our federal complaint. In this case, all of a sudden they decided to initiate state court proceedings. Those state court proceedings are on appeal right now and we are here today to seek vindication of my client's constitutional property rights under the 5th and 14th Amendments. You know, what do you say about the line of cases that seem to suggest that there's no violation of the takings clause if the government action does not result in the complete diminution of the value of the property? If the property winds up still being worth something that maybe you're not entitled, the property owners may not be entitled to avail under the takings clause. Sure, I would start just most broadly is real property, your honor, as opposed to personal property or things like that. Real property always has some value. I mean, somebody will always pay something for a piece of land, okay? So I think the idea that if I get a dollar for a piece of property, it's not a taking, is not accurate. I think we need to be guided by the fact, looking at the economic impact on the claimant, the regulations interfere with my client's reasonable investment-backed expectations, and the character of the government action. More of a Penn Central analysis. I don't think Lucas Coastal is really applicable here or not as where my clients had their piece of property. This is a unique piece of property that's pled in the complaint. This is a former quarry with excess land that was being developed by my clients for the purpose of being sold. This property was then targeted by the village explicitly for later appropriation, but they didn't take any steps to do that. What they did was they wanted to engage in pre-condemnation activity in order to depress the fair market value so that they could take it at a later date, or not at all. But really what they wanted to do is freeze the property and keep it economically idle until they could figure out what they could do with it. Now, you conclude that based on circumstantial evidence, or you actually have some direct evidence that that was their motivation? Well, Your Honor, with the amended complaint, and in the filing of the analysis, we have a number of items that were annexed to it. We have the ultraviar's notice from the village that they were interested in taking the property for a park or water supply. You're not allowed a twofer under Ohio law, so that is an incorrect statement. They weren't allowed to take that. That notice that was sent, the notice of inspection that was sent to my clients after the auction was announced, the no parking signs. Your Honor, it's not in the complaint, but this is the problem here. Were we allowed to gather and marshal our evidence for a summary judgment briefing? We have video of everybody raising their hand at the conclusion of the auction in response to the auctioneer's query, did the village's conduct influence your willingness to bid? I have a video that I would be happy to show and make part of the record if I were allowed to, of everyone raising their hands at that auction. So we have direct evidence, we have circumstantial evidence that was attached to the complaint and pled in the complaint, that the village decided if we can't have it, nobody's gonna have it. And they set up no parking signs, they did everything they could to prevent people from bidding on this property with the express intention of keeping that value undetermined, frankly, until they decided that they wanted to take it. This dispute has gone on for some time. When and how does the court determine when the taking has occurred over the course of this dispute? Yes, Your Honor. Well, for our purposes, the village's constitutional misconduct giving rise to the 1983 claim, which is pled in this case, occurred and was culminated with the frustration of the auction sale on September 18. Had the auction sale gone through, had they not interfered, maybe it would have made reserve, maybe it wouldn't have. We don't know. And that's the problem here, is because the village interfered, we, my clients, didn't get to determine what the fair market value of the property was. That is a fundamental incident of ownership under our laws and under the Constitution. What is your best case for that? It's pretty egregious conduct. I don't think there's a question here. But it's a pretty tough legal standard. And I think it was that legal standard issue that makes this such a difficult case. So help me understand where in the complaint you have alleged what the substantial damage to the property is and how you have alleged that there is damage, because we know in this record that we know what the price was paid we know that there was work over time, we know that there was a substantial bid. Under the law that governs these kind of takings, what is it, what particularly are you able to say you have alleged that constitutes the substantial damage? Everybody agrees you can't just come in and diminish the value to almost nothing, but my concern is the allegation that what we've lost is the opportunity to find out what the damage is. Help me with what cases give you that as an acceptable allegation to go forward. Sure, and I first I thank the court for cleaning up my inartful statement. They were prevented from participating in the marketplace. That's why they couldn't figure out what the... I want to follow up on Judge Strange's question and add to it a bit. What would you cite to us to support the notion that the city's conduct in this case, while perhaps undoubtedly harmful to your client, was a violation of either the takings clause or the equal protection due process clauses? What particular authority on that point? And at this point, your honor, I think the amicus citation, which we've also addressed to Amen v. Dearborn, is directly on point here. This was a case where, and if you look at the facts of Amen, you know, it was the city not giving building permits or doing inspections. The total course of conduct, and you have to look at it, I mean the totality of the circumstances, and that's why, frankly, the 12b6 ruling is so egregious in this case, is this is a totality of the circumstances. This is a context-dependent, fact-dependent inquiry that the court needed to engage in, and that necessarily requires one to go beyond the pleadings and allow for discovery and additional case activity. To your point, what have they What are their damages? Their damages are the value that the property was valued at versus the nothing that they've been forced to maintain for the past two years until the village decided to initiate imminent domain proceedings in this case. And the imminent domain proceedings at the state level, again, aren't going to compensate for any of the damage suffered. I mean, this is a very, this I think proves Justice Roberts' point in Nick, which is this is a clear case of the robber can't give the money back and there's no robbery that occurred, okay? They committed the robbery, there's the tort, the constitutional tort has been completed, the just compensation or the condemnation later has no impact on my client's ability to proceed. In answering that, we're looking back at what is an adequate allegation under this, frankly, tough standard. And I'm thinking of the Agins case. The Supreme Court said that where the fair market value of the property declines as a result of a city's announcement of its intention to condemn, no taking occurs absent extraordinary delay. And you do cite, you argue, a First Circuit case, Urban and Zadaro, I'm not sure, I'm terrible at pronunciation, and that, there they froze the property for 14 years. Do you not have, this is an 18-month delay. Tell me where you have other cases that might support your argument and still meet the Supreme Court's requirement that there be an extraordinary delay. Sure, I would first address, Your Honor, the idea that there was a substantial offer. One, that's a fact question. Two, I don't think that was an appropriate conclusion for the court to make. $610,000 in the abstract sounds like a lot of money. $8,500 an acre does not sound like a lot of money. And that's a question that should have been subject to additional discovery. Was it a substantial destruction of the value? We contend it was. We've asserted it was. We contended that they've destroyed all the value of it. The fact that it reached a price on a reserve that we were not willing to accept means there is no fair market value. I don't remember seeing what the reserve was. This was a $610,000 offer? That's what would, that was the high bid at auction. Uh-huh, and what was the reserve at auction? The reserve was, I believe, $2,700. I would have to go back and look at my notes, Your Honor. But the point of it is, my clients had set a price at which they were willing to accept, absent interference. I mean, the very definition of fair market value, which is contained in our brief. So they were willing to accept $700,000 and the bid was $610,000? $610,000. I mean, so I think, without getting lost in the weeds of the specific numbers, Your Honor, and I think that's what, that's what the District Court got wrong. If the Court may allow me to finish, I apologize, I'm over my time. Just one moment. You've got a Equal Protection Clause violation that you allege, and I'm trying to comprehend the legal basis for the Equal Protection violation that's alleged. Is this a Class of One Equal Protection theory that you're putting forth? I can't remember whether you, in your complaint, whether you use the phrase of Class of One Equal Protection or not, but is that, is that the basis for your Equal Protection claim? Your Honor, it is as stated in our brief, the bit and bridle of the Class of One was hitched to our clients. They have, yeah, we are a Class of One Equal Protection claim, and even though that's not specifically stated in the complaint, we believe the facts support that on the 12B6 analysis. And you also have a substantive due process violation, and there seems to, that you allege, there seems to be some case law suggesting you can't have both a Substantive Due Process Clause claim as well as a Takings Claim in the same case. Is that your understanding or not? Your Honor, we believe that this is primarily a violation of the Fifth Amendment Takings Clause. However, it does affect my client's substantive rights. I think, as a courthouse, sometimes, you know, when you see it, whatever bucket this Court were to pour it in, my client's constitutional rights have been impaired. But if you have a, if you have a particular claim, a Takings Claim, that generally supersedes the general Substantive Due Process, I think that's the question. I'd agree with that. Isn't that correct? Yes. All right, thank you. Good morning. Good morning. May it please the Court. My name is Danielle Rice and I represent the Village of Lucky. As a municipal corporation, the Village of Lucky is authorized under both the Ohio Constitution and Ohio Revised Code to appropriate property for a public purpose. Here, the Village seeks to appropriate appellant's property for the public purpose of constructing, maintaining, and operating a public water source, which is explicitly permitted under Ohio Revised Code 71901. Well, that's not what the facts indicate. The facts of the matter from the record seems to suggest that the township's explanation for its actions was that they wanted the property, property for either a water supply or a park. In other words, there was not an identified or identifiable single purpose. They just wanted the property for one thing or the other and had not decided what they were going to do with the property. That, that's not a clear statement of public purpose or public necessity justifying the use of eminent domain. You're just going to take somebody's property and decide later, definitively, what you're going to do with it. That doesn't seem like, that that sounds, that doesn't sound like a good faith taking. That sounds like an abuse of the process. Your Honor, what the record shows is the initial notice of intent did say public water source slash park. That was amended to say the public water source. And as the... Well, yeah, that was after you were pressed on it, you had to amend it, but that wasn't really what you started off with. You didn't have, it didn't appear that there was a definitive, identifiable use there, and you wanted these people's property. And actually, as I understand it, you didn't start, I don't mean you personally, but that your client didn't start trying to take the property until you found out that the plaintiffs had plans to sell it. I mean, it's all, there's a lot of questionable circumstances here that raised the issue of, was this really an appropriate use of the takings clause? I'll push back just a little bit, Your Honor. As the complaint itself alleges, the village has actually sought to potentially acquire this property since 1979. They've explored options to use it as a public water source. What do you mean, potentially sought? There's been, I'm gonna limit myself to the complaint itself. And what you're saying, is that in the record? It's in paragraph 12 of the complaint, Your Honor, yes. Since 1979 that the village had discussed acquiring this quarry for a public water source. Was that publicly known at that time? I'm sorry, Your Honor? Was that interest publicly known? I believe so, Your Honor. They pled it in the complaint, so it must have been publicly available information. Also pled in the complaint is that appellants at one point had engaged in discussions with the village about selling it for a public water source. I understand what you're saying. They discover that it's potentially going to be sold at auction and they've expressed an interest. But at the end of the day, what seems to be kind of the gist of your questioning is around necessity. And necessity is something that is explicitly being determined, and in fact has been determined, in the state court eminent domain proceedings. Again, I don't want to get too far out of the record, but they did talk about this in their briefing to this court, which is the state court proceedings, they challenged the necessity of the take, they argued bad faith, all of which was rejected by the state court in the eminent domain proceeding. And that is sort of the vehicle where those types of challenges are typically and more appropriately brought. Well, you're not arguing plain preclusion or something like that before I was in connection with this dispute, are you? No, absolutely not. No, Your Honor, I'm just simply making the point that what appellants seem to be complaining about is sort of a list of grievances that the village did not initiate the appropriation action in the way that they wanted it to be done. Well, what do you say about all these allegations that your opposing counsel is making that your client expressly or intentionally went about the practice of sabotaging their auction, their attempt to hold an auction to sell the property? So, Your Honor, I recognize that we're here on a motion to dismiss standard, so having to accept the allegations and the complaint as true, but while I will push back on, is the exhibits attached to that complaint almost entirely contradict some of those statements. So, for example, this idea that the village tried to make public the fact that they were going to initiate eminent domain proceedings when the transcript attached to the record actually shows it was Beth Rose, the real estate agent, who made that public. And the village is pursuing... Wait a minute, I'm not following that. Now, the auctioneer was the agent of the property owner for purposes of this auction, so I'm not sure I see what your distinction is there. So, Your Honor, let me see if I can clarify a little bit. The village's argument is that, excuse me, appellant's argument is that the village tried to sabotage this auction by not allowing bidders to come, putting up no parking signs, when in actuality what happened and what is really put in the complaint is that the village at a public auction sent public officials, they put up some no parking signs, and what appellants say is this completely froze all bidders, that he's talking about sort of a voice vote, and that's simply not true based on the allegations of the complaint. They had an offer, they had a bid for $610,000. So this idea that all bidders were persuaded to not bid on this property because of any actions by the village is just not true. It's undercut by their own allegations of getting... Where is the state proceeding? Where are they? That's on appeal. Tell me where the state proceeding ended up and what is happening in it now. Yes, so the village initiated the state court proceeding. Appellants brought various challenges related to the necessity of the take and whether the take was done in bad faith. There's some reference to the hearing transcript related to those challenges. That was in September of 23. The trial court there overruled all of the objections, found that the take was necessary. It wasn't for bad faith. Appellants have challenged that in state court appeal. It's fully briefed and just awaiting a decision. If that... And did, was the litigation that occurred at the state level, did it resolve the price? The price is determined... I know the offer. You made an offer. The city made an offer for $525,000, is that right? And that's a requirement of the eminent domain proceeding prior... Yeah, a good faith offer along with an appraisal, yes. So what will happen... It's kind of the opening bid, so to speak. Yeah, that's correct. And so assuming that the state trial court decision is affirmed, this matter will go to trial on the just compensation issue. And to kind of address an argument that's been made a lot in briefing and appellants have raised is sort of this gap. And what they seem to be arguing is the take, I think, constructively occurred when the notice of intent went out to acquire this property. And what appellants argue is that's not fair because in state court, just compensation is decided at the date of trial, when the take actually happens. That's actually just an incorrect statement of Ohio law. Typically, that is how just compensation is calculated. But appellants are free under Ohio law to petition the court to say, actually the constructive take occurred way back at the auction and we would like the compensation to be calculated from that date. And that's that's a perfectly acceptable thing to do in state court that is available to them. And like, as you've mentioned, we haven't gotten to that point in the process. But after the completion of the propriety of the taking. That's correct. Yes, Your Honor. Yes. And then necessity. Necessity and the bad faith challenges which which have been rejected. And it is it's on the next level of appeal now. It is. Yeah, it's it's fully briefed and just awaiting a decision. But I do want to go back to what appellants described. And I think Judge Stranz's questioning goes to this, is that the take, a constructive take, is possible. I do acknowledge that. But two situations need to be present. Either the property, the deprivation is so complete as to be deprived of all interest, or this extraordinary delay that Judge Stranz referred to. Here, neither of neither of those factors are present. As we've talked about, I don't think it can be said that the property was no interest at all. Some of the case law talks about unsaleable. That's kind of a quote. And appellants refer to a $1.00, doesn't mean that there's still value. But this is this is not that case. It's $610,000. I don't think we can say the property is unusable. Well, their argument is that we could not ascertain the full value, nor get the full value, because of the actions of the state. Why does, in your understanding, why does that not work as a claim in a condemnation case? Well, as a factual matter, I don't think that's correct. They could have gotten appraisal. I don't think an auction is the only way to figure out the fair market value of the land. So they went into the auction with a reserve, but there is no evidence in the record of an appraisal. The only record, the only appraisal in the record is the one that the village has provided, which is, I think, around $435,000. And at what time was that appraisal taken? That was prior to the initiation of the appropriation proceedings. So it would have been following the notice of intent, but prior to the initiation of the state court proceedings, in that 18-month intervening period. And I apologize, I don't know the exact date. And then to the extraordinary delay, to your point, both the district court and in our brief cite to numerous cases where an 18-month delay is not so extraordinary as to constitute a constructive take. There's cases that are 14 years, 7 years, many years old that didn't constitute that. That would be page 19 of our brief and page 14 of the district court decision. And I think, as a policy matter, if we adopt appellant's argument that when a notice of intent to acquire property is presented and there is a mere fluctuation of value in the property, if that automatically gives rise to a federal takings claim, one, it's going to disincentivize cities, the Ohio Department of Transportation, to give advance notice of these types of things. If they're always going to be on the hook for these fluctuations of value when appropriation proceeding begins. And the second is federal courts are going to be inundated with these types of claims. And yes, we acknowledge that NIC absolutely does create a federal takings claim in certain circumstances. Those circumstances are not present here. It's circumstances in which, one, a take has already occurred, which we dispute has happened. And two, when a government action hasn't been initiated, kind of these rare circumstances that we just don't have here. And so I think appellant's argument can open up this court to lots and lots and lots of federal takings claims that just don't appropriately belong here. Let me ask you this. When did the township decide that, the date upon which it decided that it wouldn't pursue the acquisition of the property for both water supply and the park, and would relinquish its desire to pursue the idea of a park and would just seek the property for the water supply idea? When was that decision narrowed to one source rather than two? I believe it was a few weeks, Your Honor. A few weeks. A few weeks from when? From the initial notice that said the public water source slash park. I think a few weeks later that was amended to say public water source. Does that answer the question? Yes, that answers it. Okay. And I can double check that for you. Is it in the complaint or in the briefing? I'm not sure which. I think there are allegations that this effort was undertaken for the purpose of providing the city negotiating power with another water service provider. I don't think that is in the complaint, Your Honor. So that's in the briefing then? I think it's in the briefing, yeah. And so now, based on the condemnation, your position is that the city wants this as the city's water source because of the water source that's available in the old dugout area? Yeah. The village's position is that's what it always wanted it for. I think it was maybe an inartful notice of intent to acquire. Judge Clay, my co-counsel, handed it to me, and yes, it was a few weeks. The initial notice was August 20th, 2021, and the amended notice was September 16th, 2021. Well, at the time that your client began to attempt to acquire the property, had there been any reports or environmental studies or resolutions of the town council or anything along those lines that the township desired to acquire the property for water supply? And if I could just ask one clarification. So the notice of intent to acquire was not the initiation of eminent domain proceedings. That would have been when the petition was filed in the state court. So at the time the notice of intent was put forward in August of 21, the village isn't saying we're absolutely going to do this. It's we're exploring that. And following that, again, I'm not sure this is exactly in the record, but it is in the briefing, so I'll speak to it. They contacted a company that came out. They did a site visit to see if it was a site that was appropriate for a water source. They did water testing. They found out the water was suitable. Again, not in the complaint, but appellants do raise it in their briefing. Well, if the village had not decided that it was going to do this yet, you were not yet, then the village was not yet exercising its right of eminent domain. It was something that was being thought about, but that wasn't an exercise of eminent domain at that point in time. That's correct. It was just a period of what this court has called government decision-making. So when you undertook to, I don't know, allegedly interfere with the auction and these other allegations, at that time, had the eminent domain notice been given? Notice of intent had, but the eminent domain proceedings hadn't been initiated. And at that time, had there been developed a record of the availability, not the availability, but the suitability of the use of the property for the water supply? At the time the appropriation proceedings were initiated? Yeah. Yes, they had, this is not in the complaint, Your Honor, but it is raised in the briefing. Yes, a company had been contacted to do a site visit to test the water supply. Well, that doesn't rise to the level of what I'm talking about. Just talking about it or employing a company to look into it, in other words, no decision had been made at that time that the city designed to acquire the property. I think that's fair to say, yes. It was in a process of considering it as an option, yes. All right. So let me just get the timing right. The notice of intent, which is not a promise or not a demand, but the notice to the party owning was in August of 1921. Yes. The state court proceeding challenging the necessity was in September of 1923? Or maybe you should tell me when the eminent domain notice was given. Do you remember? When the state court eminent domain proceeding was initiated? Yes. It would have been, I believe, April of 1922. April, okay. 1923. 1923. Thank you. April of 1923. April of 1923, yes, that makes sense. The challenge in the state court occurred in the fall of 1923.  That's correct. The notice of intent to acquire is a standard notice that either cities or utility districts provide to a potential piece of property owner? Yes. Is that correct? Is there a time frame that the law or regulations require you to give the notice of intent? Prior to initiating proceedings? Is there a specific time before initiating proceedings that you have to give it? At least 30 days. At least 30 days. At least 30 days is when you have to do your good faith offer with the appraisal. So kind of by default, that would require at least that amount of time. But those are regulations and requirements of the eminent domain proceeding, right? Correct. In the Ohio Revised Code. Thank you. I know I'm well over my time and if there are no further questions, I would just ask that this court affirm the district court's decision. Thank you very much. Thank you. Your rebuttal. Thank you, Your Honor. Just to clarify some of the timeline issues, the city became interested in acquiring the property or became interested in the property after they found out it was going up for auction in August of 21. I thought your complaint alleged that the city had had some discussions or interest since 1979. Not since 1979, Your Honor. In 1979, they were given the opportunity to essentially purchase the whole property for a dollar from the prior owner. They didn't take that opportunity. They did nothing with it and it was ultimately sold as blighted parcels to my client years later. I think that was to show that the village had an opportunity, they've just never taken advantage of it and they knew this property was there. I think counsel's argument kind of unintentionally makes our point here. The village initiated this process by sending out a deficient and defective notice of intent to acquire. It was sent out with the purpose of thwarting the auction sale. Now, counsel says the village was engaging in governmental decision-making during that time to figure out if they wanted to take it. But that governmental decision-making was coupled with intentional and explicit action by them to prevent my clients from selling the property. What's the evidence of that other than that the notice was issued? What evidence do you have beyond just your allegation? The evidence of the village's intentions are in the exhibits to the complaint. I think it's the initial notice. We have the conversations which were transcribed between my clients and the village solicitor, Mr. Spiewak. We have the additional information in terms of the subsequent notice of intent to acquire, which was issued after the auction. And I would note that when it was the initial notice of intent to acquire- What's the date of the auction again? Sorry, hold on, I need to- I've got it in my complaint. It seems like that would, I'll go to candor on the part of the village, not- September 18th, 2021, Your Honor. It seems like all of those things would go to candor on the part of the village, not to some kind of deceit or withholding of information. No, I don't think they were withholding, Your Honor. I think they were scrambling to try and prevent. I mean, our theory of the case is the village didn't want the property until they realized that our clients were going to sell it. They were happy to keep the property just there and economically idle. When my clients were going to sell it, they wanted to step in, but they didn't have the means or money to buy it. So they initiated this scheme to prevent anyone else from getting it until they could cobble together an imminent domain proceeding, which was only initiated after we filed the federal lawsuit. I see I'm out of time, Your Honor, if there's no further questions. Why was an appraisal not done? Why didn't your client appraise the property prior to offering it for a public auction? My client, that's one part that's not in the record because there's no formal appraisal. So my clients engaged in, with appraisers, with the auctioneer. They had a value of what they were, they had an expectation for the auction, Your Honor, based upon the auctioneer's appraisal of the property. And the expectation was the $700,000 reserve. The expectation was more than a million dollars. Yeah, but when you put in reserve, the reserve is the bar. And then- If somebody offers above that. And then that's correct, Your Honor. So my clients were willing to take less than-  Even less than probably what their best day would have been, but they weren't willing to let the fair market value get completely thrown out the window because of the village's conduct, and that's what the Constitution of malfeasance is here. And your argument is that the difference between the 610 offer and the $700,000 agreed reserve is evidence that the city destroyed the value of the property? No, I think the reserve itself is inconsequential. I think the reserve is- Well, how can that be inconsequential, counsel, when that's what you agree to sell it for? I think the- This is a public offer, auction with a reserve specified. Right, but no, the reserve wasn't specified. And I think that's the point. The reserve was not, it was with reserve. No one bidding knew what the reserve was, right? I mean, so my clients had- But your clients knew. My clients had- My clients knew that the reserve was, their agreement with the seller, the auctioneer, was that they would take $700,000. Or whatever that was. I apologize if I don't have that number completely handy. But they would take a number at a reserve, and it had to meet that price. That's correct. That's what they were willing to accept as the fair market value. Now, they would have accepted more if somebody were willing to pay more, but we- But they were willing to accept that. Well, they were willing to accept the reserve as the fair market value price of the auction, yeah. Thank you, Your Honor. Thank you very much, and the case is submitted to being